**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| K.S., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE NO.: |
| | : | |
| v. | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| PARAS HOSPITALITY INC. | : | |
| d/b/a COUNTRY HEARTH INN | : | |
| & SUITES, | : | |
| | : | |
| Defendant. | : | |

# COMPLAINT

Matthew B. Stoddard
Carson L. Wynn
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
carson@legalhelpga.com

**Attorneys for Plaintiff**

# TABLE OF CONTENTS

Introduction ..... 3

Procedural Issues ..... 5

K.S. is Trafficked for Sex ..... 6

K.S. is Trafficked for Sex at the Country Hearth ..... 8

The Country Hearth was a Have for Criminal Activity ..... 10

TVPRA Beneficiary Claim ..... 12

Causation and Damages ..... 15

Prayer for Relief ..... 17

## INTRODUCTION

1. This cause of action was originally filed in the State Court of DeKalb County, Georgia, case number 26A06277 (hereinafter, "Previous Action"). A copy of the Complaint as filed in the Previous Action is attached as **Exhibit A**.

2. The Defendant named in this action was named as the defendant in the Previous Action.

3. The Defendant named in this action was properly and timely served in the Previous Action.

4. The Previous Action was voluntarily dismissed without prejudice by Plaintiff on September 14, 2026.

5. Plaintiff now files this cause of action in federal court pursuant to O.C.G.A. § 9-2-61.

6. On September 14, 2026, counsel for Plaintiff verified with Deputy Clerk Monique Roberts of the State Court of DeKalb County that all costs of the Previous Action have been paid in full.

7. This case arises out of the sex trafficking of Plaintiff K.S. at a hotel located at 2945 Gus Place, Decatur, Georgia, 30034, which is in DeKalb County, Georgia.

8. Defendant Paras Hospitality, Inc. ("Paras") has owned, operated, and managed the property located at 2945 Gus Place, Decatur, Georgia, 30034, since 2014.

9. Plaintiff was trafficked for sex at 2945 Gus Place, Decatur, Georgia, 30034, from approximately February 1, 2016, through June 30, 2016.

10. At the time Plaintiff was trafficked, the property located at 2945 Gus Place, Decatur, Georgia, 30034, was known as the Country Hearth Inn & Suites ("Country Hearth"). It has since changed its name to the Budgetel Inn.

11. The Country Hearth, now known as the Budgetel, has long been a notorious hotspot for illicit activity, including sex trafficking and prostitution.

12. K.S. was trafficked for sex at the Country Hearth at only 17 years old by a man she knew as "Shaun."

13. Prior to K.S.'s trafficking, Defendant was on notice about the prevalence of sex trafficking and prostitution occurring at the Country Hearth.

14. Despite Defendant's knowledge, Defendant refused to take any action to prevent or deter sex trafficking, and instead, consciously allowed its property to become a haven for this type of activity and provided support to Plaintiff's trafficker and his associates.

15. As a result of Defendant's actions, Plaintiff was repeatedly sold for sex at the Country Hearth and has suffered damages.

## PROCEDURAL ISSUES

16. Given the nature of this case, K.S. is identified in this Complaint only by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed K.S.'s full name to defense counsel or will immediately upon identification of defense counsel.

17. At the time of filing this Complaint, Plaintiff's counsel is contemporaneously filing a Motion for Protective Order seeking the Court's permission for Plaintiff K.S. to proceed anonymously. Upon information and belief, Defendant will consent to K.S. proceeding without publicly disclosing her name.

18. Plaintiff K.S. is a resident of Fulton County, Georgia, and she is subject to the jurisdiction of this Court.

19. Defendant Paras is a Georgia corporation with its principal place of business located at 2945 Gus Place, Decatur, Georgia, 30034.

20. Defendant Paras can be served through its registered agent, Jugal Shah, at 2945 Gus Place, Decatur, Georgia, 30034.

21. Defendant Paras was properly served with process in this matter.

22. Defendant Paras is subject to the jurisdiction of this Court.

23. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), which is a law of the United States.

24. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in DeKalb County, Georgia, which is within the Northern District of Georgia's Atlanta Division. *See* 28 U.S.C. § 1391.

## K.S. IS TRAFFICKED FOR SEX

25. During the entire period that K.S. was trafficked for sex at Defendant's hotel, she was a minor.

26. In approximately 2015, K.S. began talking on social media with a man who she knew as "Shaun."

27. Shaun convinced K.S. that she should come over and stay with him, and they could make money together.

28. K.S. was only 16 years old at the time, and Shaun did not mention to K.S. that she would be sold for sex.

29. K.S. agreed to meet up with Shaun, and she stayed with him for a night in a hotel room.

30. The next day, Shaun informed K.S. that she needed to make money to pay for the hotel room they were in; Shaun explained to K.S. that she would do this by being sold for sex to different customers or "johns" as they are commonly called.

31. K.S. immediately told Shaun that she did not want to be sold for sex, and she requested that he take her back home.

32. Shaun told K.S. that he would not be taking her anywhere, and he demanded that she participate in two "plays," which is the term for a commercial sex transaction, to pay for the hotel room.

33. Shaun then took 16-year-old K.S. to meet with an older woman who took pictures of her to post on internet sites, such as Backpage.com, and "showed her the ropes" on selling sex for money.

34. This began an over two-year stint in which K.S. was routinely forced to have sex for money.

35. K.S. requested to stop being sold for sex on at least three occasions after the trafficking began.

36. The first request was about two or three weeks after she began being trafficked by Shaun. In response, Shaun physically assaulted K.S. and informed her that she would be allowed to go home when he decided she could go home.

37. The second time K.S. told Shaun she no longer wanted to be sold for sex he sexually assaulted her as a punishment for her request.

38. The third time K.S. told Shaun she no longer wanted to be sold for sex he informed her that he knew where she lived and would find her.

39. Shaun repeatedly told K.S. that if he allowed her to visit her home, which he did eventually during the trafficking period, and she failed to return to him, he would find her.

40. Shaun also warned K.S. that she should not "run her mouth" about him.

41. K.S. was frightened of Shaun.

42. Shaun also provided K.S. with drugs, such as weed and ecstasy, to increase his control over her while trafficking her.

## K.S. IS TRAFFICKED FOR SEX AT THE COUNTRY HEARTH

43. During the period Shaun was trafficking K.S. for sex, he used the Country Hearth for the trafficking over the course of approximately five months.

44. Shaun and his associates rented rooms at the Country Hearth from Defendant for use in trafficking K.S.

45. Defendant collected revenue from the rental of rooms to Shaun and his associates in which K.S. was forced to have sex multiple times a day.

46. Shaun took the money K.S. made from the sex acts, and he would use the funds, in part, to rent or re-rent the hotel rooms at the Country Hearth.

47. After the original room rental, Shaun or K.S. would go to the front desk of the Country Hearth each day during their stays to pay for the renewal of the room using funds from the commercial sex acts.

48. As long as K.S., a minor, had the room key and cash, Defendant did not require any identification from K.S.

49. K.S. exhibited numerous, well-known, and visible signs of a sex trafficking victim during the period she was at the Country Hearth. These included, but were not limited to:

a. K.S. was visibly young and the men she was with were much older than her;

b. K.S. was frequently wearing clothing that was inappropriate for her age, including little or revealing clothing;

c. K.S. had signs of drug use and physical injury;

d. There was heavy foot traffic to, from and in front of the rooms where K.S. was staying, with adult men entering and staying 20-30 minutes before leaving the premises entirely;

e. K.S.'s trafficker and his associates would rent rooms by the day, always paying in cash;

f. K.S., who was a young girl, would come down to the lobby to re-rent the room that was originally rented by an older man, and she would rent the room by the day and pay in cash; and

g. The rooms where K.S. stayed were filled with used condoms, used towels, and lingerie.

50. K.S. was sold for sex approximately eight times each day she stayed at the Country Hearth.

51. Upon information and belief, during the period he was trafficking K.S. for sex, Shaun was also using the Country Hearth to traffic at least one other woman.

52. K.S. ended up in a physical altercation with a woman who was associated with Shaun and was at the Country Hearth while K.S. was staying there.

53. The physical altercation started because the woman stole the funds K.S. had received from commercial sex transactions, and the woman ended up severely damaging K.S.'s eye.

54. Upon information and belief, the physical altercation was loud enough for others on the property to hear it occurring.

55. K.S. left the hotel room after the altercation holding her eye, and she was approached by an employee of the Country Hearth asking if she was okay.

56. As a result of the event, K.S. is now partially blind in her eye from this altercation at the Country Hearth.

57. Shaun, himself, also used violence and the threat of violence to force K.S. to continue to perform sex work at the Country Hearth, and he routinely provided her with drugs.

58. K.S. was forced to have sex for money over 50 times with numerous men in rooms at the Country Hearth.

59. K.S.'s victimization followed a pattern that was readily observable and should have been obvious to hotel employees based on information available to the public at large and to the hotel industry, and consequently, Defendant and its employees and agents had constructive knowledge of K.S.'s sex trafficking.

## **THE COUNTRY HEARTH WAS A HAVEN FOR CRIMINAL ACTIVITY**

60. K.S. witnessed abundant criminal activity occurring on the property each time she was at the Country Hearth.

61. K.S. observed many other females in the parking lot of the Country Hearth who appeared to be participating in commercial sex activity based on their attire and demeanor.

62. K.S. became familiar with the women and girls who were staying at the Country Hearth and learned that many of the women and girls in the parking lot soliciting sex did not even have a room at the Country Hearth.

63. The females who were soliciting sex on the property were familiar with the staff, and they even called the gentleman at the front desk, who is believed to be the owner, "Papi."

64. Upon information and belief, Papi participated in sexual relations with at least one of the women who was engaging in commercial sex activity on the property.

65. Beyond women and girls soliciting men for sex, the Country Hearth was a popular local location where individuals would loiter, and the property often had many people simply hanging out in the parking lot.

66. Upon information and belief, the Country Hearth had a general policy of not calling law enforcement.

67. Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Country Hearth at all relevant times giving Defendant knowledge of criminal activity on the property, including commercial sex activity and the sex trafficking that victimized K.S. during the relevant period.

68. Rather than taking reasonable steps to prevent sex trafficking, Defendant – in the quest for profits – created and maintained a business model that attracted, facilitated, and encouraged the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike.

69. K.S.'s sex trafficking at the Country Hearth was a foreseeable and preventable result of Defendant failing to implement reasonable, appropriate, and adequate measures to deter criminal activity and specifically sex trafficking at its hotel and failing to prevent K.S.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

## TVPRA BENEFICIARY CLAIM

70. The TVPRA, 18 U.S.C. § 1595(a), provides a civil cause of action to victims like K.S. against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" minor sex trafficking or forced labor sex trafficking.

71. Defendant "knowingly benefited" from K.S.'s trafficking by:

a. renting rooms at the Country Hearth to K.S.'s trafficker and collecting revenue from those room rentals; and

b. continuing to rent the room, which was being used to traffic K.S. for sex, to K.S. and her trafficker, and continuing to collect revenue from the repeated rental of that room.

72. Defendant took part in a common undertaking involving risk or profit with K.S.'s trafficker because Defendant gave K.S.'s trafficker personalized support by:

a. re-renting rooms to K.S., a minor, after the room had originally been rented by an older man;

b. upon information and belief, repeatedly violating its own policies and procedures, which require photo identification for renting or re-renting rooms, by not requiring K.S. to provide said photo identification when she would come to the front desk to re-rent the room;

c. knowingly and purposefully violating the law by allowing women and girls, and specifically K.S., "to loiter in public for the purpose of soliciting or procuring others to engage in any sexual acts for hire," which is a violation of Section 16-45.1 of the Code of DeKalb County, as Revised 1988; and

d. having a general policy of not calling law enforcement to the property, including, but not limited to, when K.S. was in a loud physical altercation in a hotel room on the property and then exited holding her eye.

73. K.S.'s trafficker's undertaking with Defendant violated the TVPRA with respect to K.S. because:

a. the trafficker recruited K.S. to participate in commercial sex acts at the Country Hearth owned by Defendant;

b. the trafficker harbored K.S. at the Country Hearth owned by Defendant for the purpose of K.S. participating in commercial sex acts at the property;

c. the trafficker transported K.S. to the Country Hearth owned by Defendant for the purpose of K.S. participating in commercial sex acts on the property;

d. the commercial sex acts occurred at Defendant's Country Hearth, within the rooms of the hotel that were rented by K.S.'s trafficker and his associates;

e. the trafficker used force, threats of force, fraud and coercion to cause K.S. to participate in commercial sex acts at Defendant's Country Hearth;

f. the trafficker threatened K.S. with violence and physically assaulted her to cause K.S. to engage in commercial sex acts at Defendant's Country Hearth;

g. the trafficker knowingly recruited, enticed, harbored, transported, advertised, maintained, and solicited K.S. to engage in commercial sex acts in the rooms at the Country Hearth that the trafficker and his associates rented from Defendant;

h. buyers came to Defendant's Country Hearth, purchased the "right" to have sex with K.S., and then the buyers raped K.S. at the Country Hearth;

i. K.S.'s trafficker was aware that she was not yet 18 years old, but nevertheless, he sold her for commercial sex at the Country Hearth; and

j. other actions to be proven at trial.

74. Defendant had – at minimum – constructive knowledge that the undertaking or enterprise violated the TVPRA because a reasonable hotel operator exercising ordinary care and diligence would have recognized Plaintiff's general

appearance while on the property, her association with men much older than her, the repeated cash payments for daily room rentals, the re-renting of a room by a young girl when it was originally rented by an older man, the heavy foot traffic of adult men to and from her room, the physical altercation occurring in her room, and the state of Plaintiff's room at the time of checkout as indicators of sex trafficking and would have investigated further or notified authorities.

75. The venture in which Defendant participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase of and use of cleaning supplies from out of state, the use of the internet and the public telephone network to communicate, the use of interstate highways to transport K.S. to the Country Hearth by her trafficker (and his associates), and other reasons to be proven at trial.

76. Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel, the Country Hearth, at all relevant times, giving Defendant knowledge of sex trafficking, including the sex trafficking that victimized K.S., and other crimes at the hotel during the relevant period.

## CAUSATION AND DAMAGES

77. As a direct and proximate result of Defendant's acts and omissions, K.S. suffered substantial physical, emotional, and psychological harm and other damages.

78. Defendant is jointly and severally liable with K.S.'s trafficker, his associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to K.S.

79. K.S. brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a. personal injuries;

b. past, present and future pain and suffering;

c. disability;

d. disfigurement;

e. mental anguish;

f. loss of the capacity for the enjoyment of life;

g. loss of earning capacity;

h. lost wages;

i. diminished capacity to labor;

j. incidental expenses;

k. past, present and future medical expenses;

l. permanent injuries;

m. attorneys' fees;

n. punitive damages; and

o. consequential damages to be proven at trial.

80. Punitive damages should be imposed upon Defendant without limitation or cap for its actions, which are explained more fully above.

81. Defendant is also liable for paying K.S.'s attorneys' fees and litigation expenses pursuant to the TVPRA and O.C.G.A. § 13-6-11 because Defendant has acted in bad faith in the underlying transaction as shown herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff K.S. prays for judgment against Defendant and for the following:

1) That process and summons issue requiring Defendant to appear as provided by law to answer the allegations of the Complaint;
2) Plaintiff be awarded actual damages in amounts to be shown at trial;
3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

5) Punitive damages be imposed upon Defendant;

6) Plaintiff be provided with a trial by jury; and

7) Plaintiff receive such other relief as this Court deems just and appropriate under the circumstances.

This 15th day of September, 2026.

*/s/ Matthew B. Stoddard*
Matthew B. Stoddard
Ga. Bar No.: 558215
Carson L. Wynn
Ga. Bar No.: 672645
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
carson@legalhelpga.com

Exhibit A

No. 26A06277

**STATE COURT OF DEKALB COUNTY**
**GEORGIA, DEKALB COUNTY**

**Date Summons Issued and E-Filed**

9/3/2026

/s/ Monica Gay

Deputy Clerk

Deposit Paid $ ____________

**SUMMONS**

K.S.
c/o: The Stoddard Firm
1534 N Decatur Road Ne
Atlanta, GA 30307
Plaintiff's name and address

**vs.**

[X] **JURY**

Paras Hospitality Inc. d/b/a Country Hearth Inn & Suites
c/o: Jugal Shah, registered agent
2945 Gus Place, Decatur, GA 30034
Defendant's name and address

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:

Matthew B. Stoddard
Name

1534 N Decatur Road, Atlanta, GA 30307
Address

470-467-2200 — 558215
Phone Number — Georgia Bar No.

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. The answer or other responsive pleading can be filed via electronic filing through eFileGA via www.eFileGA.com or, if desired, at the e-filing public access terminal in the Clerk's Office at 556 N. McDonough Street, Decatur, Georgia 30030

| | |
|---|---|
| Defendant's Attorney | Third Party Attorney |
| Address | Address |
| Phone No. Georgia Bar No. | Phone No. Georgia Bar No. |

**TYPE OF SUIT**

☐ Personal Injury ☐ Products Liability
☐ Contract ☐ Medical Malpractice
☐ Legal Malpractice ☐ Product Liability
☐Other

Principal $ ____________

Interest $ ____________

Atty Fees $ ____________

**Access to the e-filing site and the rules is available at www.dekalbstatecourt.net**
**To indicate consent to e-service check the box below.**
**☐(Plaintiff consents to e-service pursuant to OCGA 9-11-5 (f). The email address for service appears in the complaint.**

E-file summons1-2016

**STATE COURT OF DEKALB COUNTY, GA.**
**9/2/2026 3:58 PM**
**E-FILED**
**BY: Monica Gay**

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| K.S., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | FILE NO.: 26A06277 |
| | : | |
| | : | |
| PARAS HOSPITALITY INC. | : | |
| d/b/a COUNTRY HEARTH INN | : | |
| & SUITES, | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |

# COMPLAINT

Matthew B. Stoddard
Carson L. Wynn
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
carson@legalhelpga.com

**Attorneys for Plaintiff**

STATE COURT OF
DEKALB COUNTY, GA.
9/2/2026 3:58 PM
E-FILED
BY: Monica Gay

**TABLE OF CONTENTS**

Introduction .......... 3

Procedural Issues .......... 4

K.S. is Trafficked for Sex .......... 5

K.S. is Trafficked for Sex at the Country Hearth .......... 6

The Country Hearth was a Haven for Criminal Activity .......... 8

State Law Sex Trafficking Claim Pursuant to O.C.G.A. § 51-1-56 .......... 10

Causation and Damages .......... 12

Prayer for Relief .......... 13

## INTRODUCTION

1. This case arises out of the sex trafficking of Plaintiff K.S. at a hotel located at 2945 Gus Place, Decatur, Georgia, 30034, which is in DeKalb County, Georgia.

2. Defendant Paras Hospitality, Inc. ("Paras") has owned, operated, and managed the property located at 2945 Gus Place, Decatur, Georgia, 30034, since 2014.

3. Plaintiff was trafficked for sex at 2945 Gus Place, Decatur, Georgia, 30034, from approximately February 1, 2016, through June 30, 2016.

4. At the time Plaintiff was trafficked, the property located at 2945 Gus Place, Decatur, Georgia, 30034, was known as the Country Hearth Inn & Suites ("Country Hearth"). It has since changed its name to the Budgetel Inn.

5. The Country Hearth, now known as the Budgetel, has long been a notorious hotspot for illicit activity, including sex trafficking and prostitution.

6. K.S. was trafficked for sex at the Country Hearth at only 17 years old by a man she knew as "Shaun."

7. Prior to K.S.'s trafficking, Defendant was on notice about the prevalence of sex trafficking and prostitution occurring at the Country Hearth.

8. Despite Defendant's knowledge, Defendant refused to take any action to prevent or deter sex trafficking, and instead, consciously allowed its property to become a haven for this type of activity and provided support to Plaintiff's trafficker and his associates.

9. As a result of Defendant's actions, Plaintiff was repeatedly sold for sex at the Country Hearth and has suffered damages.

## PROCEDURAL ISSUES

10. Given the nature of this case, K.S. is identified in this Complaint only by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed K.S.'s full name to defense counsel or will immediately upon identification of defense counsel.

11. At the time of filing this Complaint, Plaintiff's counsel is contemporaneously filing a Motion for Protective Order seeking the Court's permission for Plaintiff K.S. to proceed anonymously. Upon information and belief, Defendant will consent to K.S. proceeding without publicly disclosing her name.

12. Plaintiff K.S. is a resident of Fulton County, Georgia, and she is subject to the jurisdiction of this Court.

13. Defendant Paras is a Georgia corporation with its principal place of business located at 2945 Gus Place, Decatur, Georgia, 30034.

14. Defendant Paras can be served through its registered agent, Jugal Shah, at 2945 Gus Place, Decatur, Georgia, 30034.

15. Defendant Paras was properly served with process in this matter.

16. Defendant Paras is subject to the jurisdiction of this Court.

17. Jurisdiction is proper in this Court.

18. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in DeKalb County, Georgia and because Defendant's registered agent's office is in DeKalb County, Georgia.

19. This Complaint was filed and served prior to Plaintiff K.S. turning 28 years old.

## K.S. IS TRAFFICKED FOR SEX

20. During the entire period that K.S. was trafficked for sex at Defendant's hotel, she was a minor.

21. In approximately 2015, K.S. began talking on social media with a man who she knew as "Shaun."

22. Shaun convinced K.S. that she should come over and stay with him, and they could make money together.

23. K.S. was only 16 years old at the time, and Shaun did not mention to K.S. that she would be sold for sex.

24. K.S. agreed to meet up with Shaun, and she stayed with him for a night in a hotel room.

25. The next day, Shaun informed K.S. that she needed to make money to pay for the hotel room they were in; Shaun explained to K.S. that she would do this by being sold for sex to different customers or "johns" as they are commonly called.

26. K.S. immediately told Shaun that she did not want to be sold for sex, and she requested that he take her back home.

27. Shaun told K.S. that he would not be taking her anywhere, and he demanded that she participate in two "plays," which is the term for a commercial sex transaction, to pay for the hotel room.

28. Shaun then took 16-year-old K.S. to meet with an older woman who took pictures of her to post on internet sites, such as Backpage.com.

29. This began an over two-year stint in which K.S. was routinely forced to have sex for money.

30. K.S. requested to stop being sold for sex on at least three occasions after the trafficking began.

31. The first request was about two or three weeks after she began being trafficked by Shaun. In response, Shaun physically assaulted K.S. and informed her that she would be allowed to go home when he decided she could go home.

32. The second time K.S. told Shaun she no longer wanted to be sold for sex he sexually assaulted her as a punishment for her request.

33. The third time K.S. told Shaun she no longer wanted to be sold for sex he informed her that he knew where she lived and would find her.

34. Shaun repeatedly told K.S. that if he allowed her to visit her home, which he did eventually during the trafficking period, and she failed to return to him, he would find her.

35. Shaun also warned K.S. that she should not “run her mouth” about him.

36. K.S. was frightened of Shaun.

37. Shaun also forced K.S. to take ecstasy to increase his control over her while trafficking her.

## K.S. IS TRAFFICKED FOR SEX AT THE COUNTRY HEARTH

38. During the period Shaun was trafficking K.S. for sex, he used the Country Hearth for the trafficking over the course of approximately five months.

39. Shaun and his associates rented rooms at the Country Hearth from Defendant for use in trafficking K.S.

40. Defendant collected revenue from the rental of rooms to Shaun and his associates in which K.S. was forced to have sex multiple times a day.

41. Shaun took the money K.S. made from the sex acts, and he would use the funds, in part, to rent or re-rent the hotel rooms at the Country Hearth.

42. After the original room rental, Shaun or K.S. would go to the front desk of the Country Hearth each day during their stays to pay for the renewal of the room using funds from the commercial sex acts.

43. As long as K.S., a minor, had the room key and cash, Defendant did not require any identification from K.S.

44. K.S. exhibited numerous, well-known, and visible signs of a sex trafficking victim during the period she was at the Country Hearth and those signs and symptoms were seen by Defendant. These included, but were not limited to:

a. K.S. was visibly young and the men she was with were much older than her;

b. K.S. was frequently wearing clothing that was inappropriate for her age, including little or revealing clothing;

c. K.S. had signs of drug use and physical injury;

d. There was heavy foot traffic to, from and in front of the rooms where K.S. was staying, with adult men entering and staying 20-30 minutes before leaving the premises entirely;

e. K.S.'s trafficker and his associates would rent rooms by the day, always paying in cash;

f. K.S., who was a young girl, would come down to the lobby to re-rent the room that was originally rented by an older man, and she would rent the room by the day and pay in cash; and

g. The rooms where K.S. stayed were filled with used condoms, used towels, and lingerie.

45. K.S. was sold for sex approximately eight times each day she stayed at the Country Hearth.

46. Upon information and belief, during the period he was trafficking K.S. for sex, Shaun was also using the Country Hearth to traffic at least one other woman.

47. While Shaun was trafficking K.S. at Country Hearth, another woman who was helping Shaun traffic and subjugate K.S., beat K.S.

48. First the woman took money that K.S. received from commercial sex transactions and then the woman severely damaged K.S.'s eye.

49. Upon information and belief, the physical altercation was loud enough for others on the property to hear it occurring.

50. K.S. left the hotel room after the event holding her eye, and she was approached by an employee of the Country Hearth asking if she was okay.

51. As a result of the event, K.S. is now partially blind in her eye from this altercation at the Country Hearth.

52. Shaun, himself, also used violence and the threat of violence to force K.S. to continue to perform sex work at the Country Hearth, and he routinely provided her with drugs.

53. K.S. was forced to have sex for money over 50 times with numerous men in rooms at the Country Hearth.

54. K.S.'s victimization followed a pattern that was readily observable and should have been obvious to hotel employees based on information available to the public at large and to the hotel industry, and consequently, Defendant and its employees and agents had constructive knowledge of K.S.'s sex trafficking.

**<u>THE COUNTRY HEARTH WAS A HAVEN FOR CRIMINAL ACTIVITY</u>**

55. K.S. witnessed abundant criminal activity occurring on the property each time she was at the Country Hearth.

56. K.S. observed many other females in the parking lot of the Country Hearth who appeared to be participating in commercial sex activity based on their attire and demeanor.

57. K.S. became familiar with the women and girls who were staying at the Country Hearth and learned that many of the women and girls in the parking lot soliciting sex did not even have a room at the Country Hearth.

58. The females who were soliciting sex on the property were familiar with the staff, and they even called the gentleman at the front desk, who is believed to be the owner, "Papi," and would hug and hold him and treat him in a way that is not consistent with that of a relationship between hotel owner and guest.

59. Beyond women and girls soliciting men for sex, the Country Hearth was a popular local location where individuals who sought to purchase sex, sought to purchase drugs, and sought to commit other crimes would loiter, and the property often had many people simply hanging out in the parking lot.

60. Upon information and belief, the Country Hearth had a general policy of not calling law enforcement unless someone was destroying Defendant's property.

61. Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Country Hearth at all relevant times giving Defendant knowledge of criminal activity on the property, including commercial sex activity and the sex trafficking that victimized K.S. during the relevant period.

62. Rather than taking reasonable steps to prevent sex trafficking, Defendant – in the quest for profits – created and maintained a business model that attracted and facilitated the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike.

63. K.S.'s sex trafficking at the Country Hearth was a foreseeable and preventable result of Defendant failing to implement reasonable, appropriate, and adequate measures to deter criminal activity and specifically sex trafficking at its hotel and failing to prevent K.S.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

**STATE LAW SEX TRAFFICKING CLAIM PURSUANT TO O.C.G.A. § 51-1-56**

64. Plaintiff's traffickers committed the offense of trafficking Plaintiff for sexual and labor servitude because:

a. Plaintiff had sexual relations with numerous individuals at the Country Hearth;

b. the individuals paid Plaintiff's traffickers to have sexual relations with Plaintiff at the Country Hearth;

c. Plaintiff was under the age of 18 at the time of the events; and

d. Plaintiff's traffickers used violence and threats of violence and drugs to coerce Plaintiff to have sexual relations against her will at the Country Hearth.

65. Defendant knowingly benefitted financially from Plaintiff's trafficking because

a. the trafficker rented rooms at the hotel;

b. the trafficker used the Defendant's WIFI network;

c. Defendant collected revenue from the room rentals and the use of the Defendant's WIFI network; and

d. Plaintiff was advertised for sex through Defendant's WIFI network and forced to have sex in Defendant's rooms.

66. Defendant participated in a venture or scheme with Plaintiff's trafficker because:

a. Plaintiff's trafficker would pay in cash for one night at a time, booking the next night's stay before check-out time;

b. Defendant directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

c. Defendant was directly renting rooms to the same trafficker – Plaintiff's trafficker;

d. Defendant had commercial dealings with Plaintiff's trafficker and then continued to rent rooms to Plaintiff's trafficker;

e. Defendant had a continuous business relationship with Plaintiff's trafficker such that Defendant established a pattern of conduct with the trafficker;

f. after renting the room for the first night, Plaintiff's traffickers had prior commercial dealings with Defendant and then reinstated those dealings;

g. Defendant associated with Plaintiff's trafficker in an effort to force Plaintiff to serve Defendant's business objectives;

h. Defendant owned, operated, and maintained the hotel in question;

i. after Shaun originally rented the rooms, Defendant began allowing K.S. (a minor) to pay for the rooms and would give keys to the rooms to K.S. even though she was not an adult;

j. Defendant violated Sec. 18-136(a) of the DeKalb County Code by not reporting violations of law to DeKalb County Police without delay that were witnessed and made known to them including the beating of K.S. by one of Shaun's associates and furthermore that continuous failure to report created a safe haven for traffickers including K.S.'s trafficker Shaun;

k. Defendant violated Sec. 18-136(f) of the DeKalb County Code, and upon information and belief, its own policies and procedures as it did not require photo identification for the renting or re-renting of rooms and did not require K.S. to provide a photo identification when K.S. would come to the front desk and provide the sex sale proceeds for continuing to use the room and would still provide K.S. with a room key and this policy of not following the law and violating its own policies facilitated Shaun's ability to traffic K.S.; and

l. Defendant violated Sec. 18-139(b) of the DeKalb County Code in that it did not provide security in its parking lot and instead, in violation of DeKalb County Code Sec. 16-45.1 allowed women and girls including K.S. to "loiter for the purpose of soliciting or procuring others to engage in any sexual acts for hire" and Defendant further violated Sec. 18-142(d) by not enforcing the mandatory juvenile curfew as it relates to K.S.

67. As shown above, Defendant had – at minimum – constructive knowledge that

Plaintiff was being trafficked for sex at the property.

68. Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiff, and other crimes at the hotel during the relevant period.

69. Plaintiff is bringing a claim grounded in State law and is not bringing a claim under the Federal TVPRA.

## CAUSATION AND DAMAGES

70. As a direct and proximate result of Defendant's acts and omissions, K.S. suffered substantial physical, emotional, and psychological harm and other damages.

71. Defendant is jointly and severally liable with K.S.'s trafficker, his associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to K.S.

72. K.S. brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a. personal injuries;

b. past, present and future pain and suffering;

c. disability;

d. disfigurement;

e. mental anguish;

f. loss of the capacity for the enjoyment of life;

g. loss of earning capacity;

h. lost wages;

i. diminished capacity to labor;

j. incidental expenses;

k. past, present and future medical expenses;

l. permanent injuries;

m. attorneys' fees;

n. punitive damages; and

o. consequential damages to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff K.S. prays for judgment against Defendant and for the following:

1) That process and summons issue requiring Defendant to appear as provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

5) Punitive damages be imposed upon Defendant;

6) Plaintiff be provided with a trial by jury; and

7) Plaintiff receive such other relief as this Court deems just and appropriate under the circumstances.

This 2nd day of September, 2026.

*/s/ Matthew B. Stoddard*
Matthew B. Stoddard
Ga. Bar No.: 558215
Carson L. Wynn
Ga. Bar No.: 672645
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
carson@legalhelpga.com

STATE COURT OF
DEKALB COUNTY, GA.
9/2/2026 3:58 PM
E-FILED
BY: Monica Gay

# General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☒ State Court of DeKalb County

**For Clerk Use Only**

Date Filed 9/3/2026 (MM-DD-YYYY) Case Number 26A06277

| Plaintiff(s) | Defendant(s) |
| --- | --- |
| K.S. | Paras Hospitality Inc. d/b/a Country Hearth Inn & Suites |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |

Plaintiff's Attorney Matthew B. Stoddard Bar Number 558215 Self-Represented ☐

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☒ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_______________ Case Number _______________ Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _______________ Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

STATE COURT OF DEKALB COUNTY, GA.
9/2/2026 3:58 PM
E-FILED
BY: Monica Gay